Matthew L. Lalli (6105)
Zaven A. Sargsian (14776)
SNELL & WILMER L.L.P.
15 West South Temple
Suite 1200
Gateway Tower West
Salt Lake City, Utah  84101
Telephone:  801.257.1900
Facsimile:  801.257.1800
Email: mlalli@swlaw.com
        zsargsian@swlaw.com

*Attorneys for Plaintiff Liberty
Mutual Fire Insurance Co.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LIBERTY MUTUAL FIRE INSURANCE CO., a Wisconsin corporation,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL BAKER INTERNATIONAL, INC., a Pennsylvania corporation; JOELLE SATTERTHWAITE, an individual; and JACKSON SATTERTHWAITE, an individual; AUDREY J. YAEGER, an individual,<br><br>    Defendants. | **COMPLAINT FOR DECLARATORY RELIEF**<br><br>Case No. 2:19-cv-00881-JNP<br><br>Hon. Judge Jill N. Parrish |

Plaintiff Liberty Mutual Fire Insurance Co. ("Liberty"), through its counsel, files this

Complaint for Declaratory Relief ("Complaint") and alleges as follows:

4836-2069-8796

## PARTIES, JURISDICTION, AND VENUE

1. Liberty is an insurance company organized under the laws of the State of Wisconsin, with its principal place of business located at 175 Berkley Street, Boston, Massachusetts.

2. Upon information and belief, Defendant Michael Baker International, Inc. ("MBI Inc.") is a Pennsylvania corporation with its principal place of business in Pittsburgh, Pennsylvania.

3. Upon information and belief, Defendant JoElle Satterthwaite ("JoElle") is a resident of Salt Lake County, Utah. JoElle is the parent and guardian of her minor son, and Defendant, Jackson Satterthwaite.

4. Upon information and belief, Defendant Jackson Satterthwaite ("Jackson") is a resident of Salt Lake County, Utah. Jackson is a minor, and upon information and belief his guardian ad litem and conservator is Rekehl Johnson.

5. Upon information and belief, Defendant Audrey J. Yeager ("Yeager") is a resident of Salt Lake County, Utah.

6. The Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and the amount in controversy is in excess of $75,000.00.

7. This action is brought pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act, which allows this Court to adjudicate parties' respective rights and other legal relations in an actual controversy.

8. Venue is proper in the United States District Court for the District of Utah pursuant to 28 U.S.C. 1391(b).

## FACTUAL ALLEGATIONS

### *The Sattherwaite Complaint*

9. On November 2, 2018, JoElle Satterthwaite, individually and as guardian of her minor son, Jackson Satterthwaite, (the "Satterthwaites"), filed a Complaint and Jury Demand in the Third Judicial District Court in Salt Lake County, Utah against RLW/Clyde, L.P. ("RLW"), Ralph L. Wadsworth Construction Company, LLC ("Ralph"), W.W. Clyde & Co. ("Clyde"), Michael Baker International, Inc. ("MBI Inc."), and the Utah Department of Transportation, State of Utah (collectively "Defendants").

10. On March 14, 2019, the Satterthwaites filed a Second Amended Complaint and Jury Demand, a copy of which is attached hereto as Exhibit A (the "Satterthwaite Complaint"). The Satterthwaites added H.W. Lochner, Inc. ("Lochner") as a Defendant, and also named Rekehl Johnson as guardian ad litem and conservator for Jackson.

11. The Satterthwaites alleged as follows: on January 25, 2018, JoElle was driving her car with her son Jackson riding as a passenger in the backseat. JoElle was driving northbound on Bangerter Highway as she approached the 11400 South intersection (the "Intersection"). At the time, the Intersection was under construction as part of a construction project on Bangerter Highway (the "Construction Project"). RLW, Ralph, and/or Clyde were the general contractors on the Construction Project, and MBI Inc. and Lochner were subcontractors. The Defendants were involved in the design, preparation, inspection, work, and/or implementation of the Construction Project, including its traffic-control plan. Before January 22,

2018, drivers could make a left-hand turn from northbound Bangerter Highway onto westbound 11400 South at the Intersection, but Defendants stopped allowing drivers to make such left-hand turns on January 22, 2018.  JoElle, however, approached the Intersection and made a left turn on a green light.  As she drove through the Intersection, her car was struck by a southbound motorist who was speeding.  As a result of the incident, JoElle and Jackson were seriously injured, Jackson more so.

12.   The Satterthwaites allege they suffered economic and noneconomic damages because of the foregoing incident.

13.   The Satterthwaites raised a single cause of action for negligence against Defendants.

14.   The Satterthwaites alleged that Defendants had a duty to "(1) provide a safe intersection; (2) provide motorists with adequate traffic lights and signage; and (3) exercise reasonable care in relation to their involvement with the Construction Project, including its traffic-control plan."  (Satterthwaite Complaint at ¶ 36.)

15.   The Satterthwaites further alleged that Defendants "breached their duties to Plaintiffs and acted negligently in several ways, including without limitation:

   a. By failing to provide adequate signs, instructions, and traffic-control devices informing motorists that left-hand turns were no longer allowed;

   b. By failing to provide a traffic-control light on the west side of the large, east-west gap before motorists entered southbound traffic;

   c. By failing to remedy a defective, unsafe, and/or dangerous condition at the Intersection;

   d. By failing to comply with applicable standards, codes, and regulations for traffic control and signage at the Intersection;

    e. By failing to properly hire, train, retain, and/or supervise personnel working on the Construction Project;

    f. By failing to comply with the applicable traffic-control plan for the Intersection;

    g. By implementing and/or approving a defective traffic-control plan for the Intersection;

    h. By failing to have law enforcement personnel regulating traffic at the Intersection at the time of the incident;

    i. By failing to allow sufficient timing for motorists to get across the large, east-west gap before entering southbound traffic;

    j. By creating a defective, unsafe, and/or dangerous condition at the Intersection; and/or

    k. Any other acts and/or omissions that may later be discovered.

(Satterthwaite Complaint at ¶ 37.)

16. As of the filing of this Complaint, the Satterthwaite case is pending and has not yet gone to trial.

### ***The Yeager Complaint***

17. On November 1, 2018, Audrey J. Yeager ("Yeager") filed a Complaint and Jury Demand in the Third Judicial District Court in Salt Lake County, Utah against RLW, Ralph, Clyde, MBI Inc., and UDOT.

18. On June 19, 2019, Yeager filed an Amended Complaint and Jury Demand, a copy of which is attached hereto as Exhibit B (the "Yeager Complaint"). Yeager added Lochner as a Defendant.

19. The allegations in the Yeager Complaint are substantially similar to the Satterthwaite Complaint, but have certain differences. Yeager alleged as follows: on August 4, 2017, Yeager was walking eastbound on 11400 South toward the intersection with Bangerter

Highway.  Yeager was walking on the southside of 11400 South.  As Yeager approached the Intersection, the crosswalk signal for her to cross the Intersection was covered up so Yeager could not see the crosswalk signal.  However, northbound traffic at the Intersection was stopped, and Yeager saw the red light for northbound traffic.  So, Yeager proceeded through the crosswalk.  But as she was proceeding through the crosswalk, Yeager was struck by a car who was speeding southbound.

20. Yeager alleges she suffered economic and noneconomic damages because of the foregoing incident.

21. Yeager raised a single cause of action for negligence against Defendants.

22. Yeager alleged that Defendants had a duty to "(a) provide a safe intersection; (b) provide pedestrians with working traffic-control signals at the Intersection; (c) provide pedestrians with safe crosswalk, or alternative routes, at the Intersection; and (d) exercise reasonable care in relation their involvement with the Construction Project, including its traffic-control plan."  (Yeager Complaint ¶ 30.)

23. Yeager further alleged that Defendants "breached their duties to Plaintiff and acted negligently in several ways, including without limitation:

    a. By failing to provide proper, working, and/or adequate crosswalk signals at the Intersection;

    b. By failing to provide a safe crosswalk for pedestrians at the Intersection;

    c. By failing to provide a safe detour for pedestrians to cross the Intersection;

    d. By failing to remedy a defective, unsafe, and/or dangerous condition at the Intersection;

    e. By failing to place adequate warnings and/or instructional signage at and near the Intersection;

    f.  By failing to comply with applicable standards, codes, and regulations for traffic control and signage at the Intersection;

    g.  By failing to properly hire, train, retain, and/or supervise personnel working on the Construction Project;

    h.  By failing to comply with the applicable traffic-control plan for the Intersection;

    i.  For implementing and/or approving a defective traffic-control plan for the Intersection;

    j.  Creating a defective, unsafe, and/or dangerous condition at the Intersection; and/or

    k.  Any other acts and/or omissions that may be later be discovered.

(Yeager Complaint ¶ 31.)

24. As of the filing of this Complaint, the Yeager case is pending and has not yet gone to trial.

### *Commercial General Liability Policy*

25. Defendant MBI Inc. tendered the Yeager and Satterthwaite Complaints for defense and indemnification under commercial general liability insurance policies issued by Liberty.

26. Liberty issued Commercial General Liability Policy No. TB2-681-004145-716 ("Policy 716"), with a policy period of August 30, 2016 to August 30, 2017 to named insured Michael Baker International, LLC ("MBI LLC").  Policy 716 applies to the Yeager action.  This foregoing policy was renewed on August 30, 2017 as Policy No. TB2-681-004145-717 ("Policy 717"), with a policy period of August 30, 2017 to August 30, 2018.  The renewed policy, Policy 717, applies to the Satterthwaite action.  A copy of the Policies is attached hereto as Exhibit C and incorporated herein by reference.

4836-2069-8796

7

27. Subject to a complete reservation of rights, Liberty is currently providing MBI Inc. a defense under the Policies in both the Yeager and Satterthwaite Complaints.

*Coverage Under the Policy*

28. Policy No. TB2-681-004145-717 (the "Policy") states the following regarding coverage of bodily injury and property damage liability:

> **SECTION I – COVERAGES**
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1. Insuring Agreement**
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury"[1] or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
>    […]
>
>    b. This insurance applies to "bodily injury" and "property damage" only if:
>       (1) The "bodily injury" or "property damage" is caused by an "occurrence"[2] that takes place in the "covered territory"[3];
>       (2) The "bodily injury" or "property damage" occurs during the policy period; and
>       (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred in whole or in part.
>       . . .

---

[1] "Bodily injury" is defined in Section V(3) as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at anytime." Endorsement LC 29 09 10 11 redefined "bodily injury" to include "b. Mental anguish, shock or humiliation arising out of injury as defined in paragraph a. above. Mental anguish means any time of mental or emotional illness or distress."

[2] "Occurrence" is defined in Section V(13) as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

[3] "Covered territory" is defined in Section V(4) as "[t]he United States of America (including its territories and possessions) Puerto Rico and Canada . . . ."

[…]

e.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

### *Conditions Under the Policy*

29. The Policy also has the following condition:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

[…]

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies.  If this insurance is primary our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in Paragraph c. below.

**b. Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

        (iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

    (b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit".  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    (a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    (b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in the Excess Insurance provision and was not brought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method of Sharing**

    If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

    If any of the insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

*Relevant Exclusions Relating to Coverage A Under The Policy*

30. With respect to coverage, several exclusions in amendatory endorsements apply, including the following:

**Endorsement CG 21 16 04 13 (EXCLUSION – DESIGNATED PROFESSIONAL SERVICES)**

With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph **2. Exclusions of Section I – Coverage A – Bodily Injury and Property Damage Liability** and Paragraph **2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability**:  This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service."

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional service.

**SCHEDULE**

**Description Of Professional Services**:

All professional services performed by or on behalf of the named insured

\*   \*   \*

**Endorsement CG 22 34 04 13 (EXCLUSION – CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS)**

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to "bodily injury", "property damage" or "personal advertising injury" arising out of:

1. The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or

    2. Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved that which is described in paragraph 1. or 2.

This exclusion does not apply to "bodily injury" or "property damage" due to construction or demolition work done by you, your "employees" or your subcontractors.

                  \*      \*      \*

**Endorsement CG 22 43 04 13 (EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY)**

The following exclusion is added to Paragraph **2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to "bodily injury", "property damage" or personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2. Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

31. A copy of Endorsement CG 21 16 04 13, Endorsement CG 22 34 04 13, and Endorsement CG 22 43 04 13 are attached hereto as Exhibit D.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment – 28 U.S.C. § 2201)

32. Liberty incorporates by this reference each and every preceding allegation as if fully set forth herein.

33. MBI Inc. is a defendant in the Satterthwaite and Yeager Complaints.

34. MBI Inc. contends that coverage is available under the Policy for the Satterthwaite and Yeager Complaints, and that it is entitled to a defense and indemnification.

35. However, MBI Inc. is not an insured under the Policy. The insured under the Policy is MBI LLC, a limited liability company.

36. MBI LLC is not a defendant in the Satterthwaite and Yeager Complaints.

37. Because MBI Inc. is not an insured under the Policy, it is not entitled to coverage for any loss it may incur under the Satterthwaite and Yeager Complaints.

38. An actual dispute and controversy exists between Liberty and MBI Inc. regarding whether coverage is available to MBI Inc. for any loss it may incur as a result of the Satterthwaite and Yeager Complaints.

39. Therefore, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations, and liabilities that exist pursuant to the Policy.

40. As such, Liberty seeks a declaratory judgment that under the Policy there is no coverage afforded for or duty to defend MBI in the lawsuits.

## SECOND CAUSE OF ACTION
**(Declaratory Judgment – 28 U.S.C. § 2201)**

41. Liberty incorporates by this reference each and every preceding allegation as if fully set forth herein.

42. MBI Inc. contends that coverage is available under the Policy for the Satterthwaite and Yeager Complaints, and that it is entitled to a defense and indemnification.

43. However, coverage is excluded under any or all of the Endorsements discussed above, including Endorsement CG 21 16 04 13 (Designated Professional Services).

44. Alternatively, if coverage is not excluded, other valid and collectible insurance is available to MBI Inc. for a loss covered under Coverages A or B of the Policy's Coverage Part. As a result, the Other Insurance provision in Section IV(4) of the Policy applies, in which case the Policy is either (i) excess insurance, or (ii) primary insurance subject to the method of sharing provision in Section IV(4)(c) of the Policy.

45. An actual dispute and controversy exists between Liberty and MBI Inc. regarding whether coverage is available to MBI Inc. for any loss it may incur as a result of the Satterthwaite and Yeager Complaints.

46. Therefore, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations, and liabilities that exist pursuant to the Policy.

47. As such, Liberty seeks a declaratory judgment that under the Policy there is no coverage afforded for or duty to defend MBI Inc. in the lawsuits.

## THIRD CAUSE OF ACTION
### (Declaratory Judgment - 28 U.S.C. § 2201)

48. Liberty incorporates by this reference each and every preceding allegation as if fully set forth herein.

49. Plaintiffs in the Satterthwaite and Yeager Complaints are seeking, or may seek, punitive damages against MBI Inc.

50. Coverage is excluded under any or all of the Endorsements discussed above, and there is no coverage for any punitive damages that may be assessed against MBI Inc.

51. To the extent the court determines that MBI Inc. is entitled to any coverage at all for the losses it may incur as a result of the Satterthwaite and Yeager Complaints, an actual dispute and controversy exists between Liberty and MBI Inc. regarding whether coverage is available to MBI Inc. for any punitive damages that may be assessed against it in favor of the Satterthwaites, Yeager, or both.

52. Therefore, a declaratory judgment is both necessary and proper in order to set forth and determine whether MBI Inc. is covered under the Policy for any punitive damages that may be assessed against it.

53. As such, Liberty seeks a declaratory judgment that under the Policy there is no coverage afforded to MBI Inc. for punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Liberty prays for the following relief:

For a declaration that:

1. MBI Inc. is not entitled to coverage under the Policy because it is not an insured.

2. Even if MBI Inc. is an insured under the Policy, coverage under the Policy is excluded under Endorsement CG 21 16 04 13, Endorsement CG 22 34 04 13, Endorsement CG 22 43 04 13, or all three.

3. As coverage is excluded, Liberty has no duty to defend MBI Inc. in either the Satterthwaite or Yeager cases.

4. Alternatively, if coverage is not excluded under any of the Endorsements, then (a) the Other Insurance provision in Section IV(4) applies; (b) other valid and collectible insurance is available to MBI for any loss covered under Coverages A and B; and (c) the Policy is either (i) excess insurance subject to the limitations in Section IV(4)(b), or (ii) primary insurance subject to the method of sharing described in Section IV(4)(c).

5. In addition, if coverage is not excluded, then Liberty is entitled to a separate declaration that under the Policy there is no coverage afforded to MBI Inc. for any punitive damages that may be assessed against it.

6. For such other and further relief as the Court deems just and proper.

DATED this 8th day of November, 2019.

SNELL & WILMER L.L.P.

*/s/ Matthew L Lalli*
Matthew L. Lalli
Zaven A. Sargsian
*Attorneys for Plaintiff Liberty Mutual Fire Insurance Co.*