IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LIBERTY MUTUAL FIRE INSURANCE CO., <br><br>      Plaintiff, <br><br> v. <br><br> MICHAEL BAKER INTERNATIONAL, INC., <br><br>      Defendant. | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT** <br><br><br> Case No. 2:19-cv-00881-JNP-DAO <br><br> District Judge Jill N. Parrish <br><br> Magistrate Judge Daphne A. Oberg |

Before the court is Plaintiff Liberty Mutual Fire Insurance Co.'s ("Liberty") second motion for summary judgment. This motion arises from a dispute between Liberty and its insured, Michael Baker International, Inc. ("Michael Baker"). The dispute began when Liberty sought a declaratory judgment that it need not provide coverage for or defend two lawsuits brought against its insured, Michael Baker, for injuries suffered in a construction zone where Michael Baker performed work. In response, Michael Baker filed several counterclaims seeking to recover expenses incurred as a result of one of the underlying lawsuits, as well as expenses incurred in the present declaratory judgment action. In the motion before the court, Liberty seeks summary judgment on Michael Baker's counterclaims, arguing that Michael Baker has suffered no recoverable damages. For the following reasons, the court DENIES Liberty's motion.

## FACTUAL BACKGROUND

While Liberty Mutual seeks a declaratory judgment related to two separate lawsuits against Michael Baker for injuries arising from the same construction zone, Michael Baker's damages counterclaims—which are the subject of this motion—pertain to only one of the underlying lawsuits.[1] Therefore, the court will confine its discussion of facts to the relevant underlying lawsuit.

### I.   UNDERLYING CAR ACCIDENT

Michael Baker is an engineering firm that focuses on solving complex infrastructure challenges. In April 2017, Michael Baker contracted with RLW/Clyde, a contractor, to provide engineering and other design services in connection with the construction of four interchanges on Bangerter Highway. The interchanges are located at the intersection of 11400 South and Bangerter Highway in South Jordan, Utah.

On January 25, 2018, JoElle Satterthwaite ("Satterthwaite") drove northbound on Bangerter Highway with her young son, Jackson Satterthwaite (collectively, "the Satterthwaites") unsecured in the back seat. Satterthwaite turned left onto 11400 South. As she turned across the southbound lanes, a speeding motorist traveling southbound struck her vehicle, injuring Satterthwaite. The impact also ejected her son from the vehicle, causing him life-altering, permanent injuries.

As a result of the accident, the Satterthwaites sued Michael Baker, among others, asserting a single cause of action for negligence/recklessness. The Satterthwaites alleged that

---

[1] Michael Baker predicates its damages counterclaims on expenses stemming from *Satterthwaite v. RLW/Clyde, a Joint Venture, L.P., et al.*, Case No. 180908285 (3d Jud. Dist. Utah). The other lawsuit underlying this litigation is *Yaeger v. RLW/Clyde, a Joint Venture, L.P., et al.*, Case No. 180908267 (3d Jud. Dist. Utah). The settlement and defense costs incurred in the *Yaeger* matter did not exhaust Michael Baker's $250,000 deductible for the Liberty insurance policy. Therefore, it is not at issue in this motion.

Michael Baker breached its duty of care for a number of reasons, among other things, failing to provide adequate signage and traffic lights at the intersection, implementing a defective traffic control plan at the intersection, and failing to properly train and supervise personnel working at the intersection.

The lawsuit carried significant exposure for Michael Baker. It involved a catastrophic injury to a young child. And it involved the delicate issue of a parent who perhaps bore some responsibility for the accident. The attorney hired by Liberty to represent Michael Baker stated that the case rated as a ten on a 1-10 scale of seriousness for Michael Baker.

## II.  DEFENSE OF THE SATTERTHWAITE ACTION

On December 13, 2018, Liberty agreed to defend Michael Baker in the Satterthwaite lawsuit, subject to a reservation of rights. ECF No. 185-2, at 61-64. Essentially, Liberty provided a defense to Michael Baker, but reserved the right to disclaim insurance coverage and indemnification at a later date based on policy exclusions. Liberty cited three potential policy endorsements that could apply to limit coverage. ECF No. 212-2, at 4 (citing CG 22 34 04 13; CG 22 43 04 13; and CG 21 16 04 13).

Liberty hired one of its panel lawyers, Robert Thompson ("Thompson") of the firm Snow, Christensen, and Martineau, to defend Michael Baker. Liberty and Thompson had a longstanding relationship—Liberty had hired Thompson on a number of occasions prior to the Satterthwaite action and hired Thompson to represent insureds in about twenty matters following the Satterthwaite action. ECF No. 185-2, at 32.

At the same time, the Liberty adjuster assigned to the case recommended that Liberty open a separate "coverage file" to handle the coverage issues independently from the underlying defense. *Id.* at 116-17. Nearly nine months later, Liberty referred the coverage matter to a

conflict adjuster, Adam Woellert, in early September 2019. *Id.* at 138. On November 8, 2019, Liberty filed this lawsuit seeking a declaratory judgment that it need not provide coverage for or defend the Satterthwaite action. Liberty did not alert Michael Baker in advance that it planned to file this lawsuit.

On August 22, 2019, the Satterthwaites demanded a $12,000,000 settlement from Michael Baker. Thompson did not discuss the settlement demand with Michael Baker or respond to the Satterthwaites. ECF No. 185-4, at 86-87. On November 8, 2019—the same day that Liberty filed this declaratory judgment action—Liberty's counsel in this action, Matthew Lalli ("Lalli"), rejected the settlement proposal, citing Liberty's determination that Michael Baker's policy excluded the underlying accident. ECF No. 185-3, at 5. Liberty Mutual did not inform Michael Baker that it had rejected the Satterthwaites' settlement offer. No. 185-4, at 86-87. Michael Baker found out about the rejection via discovery in the present case. The Satterthwaites then increased the settlement demand to $52,000,000. Lalli rejected the heightened settlement demand again, citing Liberty's determination that coverage was excluded. *Id.* at 63.

During this time, Thompson hired a traffic-control expert, Robert Chamberlin ("Chamberlin"), to testify on behalf of Michael Baker. Chamberlin had a number of damaging opinions regarding Michael Baker's work at the intersection, including that the traffic-control plan "was deficient," although it did not violate the Department of Transportation standards. *Id.* at 103. Chamberlin also agreed that Michael Baker could have opted for a "less ambiguous" traffic signal. *Id.* Ultimately, Chamberlin opined that Michael Baker bore joint responsibility for the design and approval of the traffic control plan. *Id.* at 110. Thompson included this information in a supplemental expert designation he transmitted to the Satterthwaites' counsel on December 20, 2019. *Id.* at 125.

At this point, Michael Baker had serious reservations about the progression of events. Specifically, Michael Baker was concerned that Liberty had impeded Thompson's efforts to resolve the Satterthwaite matter by failing to give him necessary settlement authority and adequate resources to defend the case, that Thompson had engaged an expert whose opinions were critical of Michael Baker's work, and that Liberty's denial of any duty to indemnify Michael Baker created a conflict of interest necessitating independent counsel. Additionally, Michael Baker worried that Thompson had never tried a similarly serious case involving severe injuries to a child and questionable conduct by a parent that may have contributed to the injuries. Finally, Michael Baker found it odd that Liberty's coverage counsel, Lalli, responded to multiple settlement offers in an action purportedly being litigated by Thompson. In light of its concerns, Michael Baker engaged James Brogan ("Brogan") of DLA Piper to lead Michael Baker's defense in the Satterthwaite action. On Brogan's recommendation, Michael Baker later engaged Heidi Goebel of Goebel Anderson as well. Once they joined the team, both Brogan and Goebel observed that several decisions Thompson made in defending Michael Baker concerned them.

On March 17, 2020, Michael Baker wrote to the Liberty adjuster explaining its decision to retain Brogan and requesting that Liberty pay Brogan's fees. ECF No. 177-1, at 30-34. Liberty did not respond. On April 1, 2020, Michael Baker contacted Liberty's adjuster, this time to explain its decision to retain Goebel. ECF No. 185-4, at 176-77. Again, Michael Baker requested that Liberty pay Brogan and Goebel's fees. *Id.* On April 6, 2020, Liberty responded, stating that it would be willing to consider replacing Thompson with Brogan or Goebel subject to Thompson's rate structure and other contractual requirements by Liberty. *Id.* at 179-80. Michael Baker replied, requesting that Liberty provide the relevant contractual requirements and rate

structure. *Id.* at 182. Liberty never provided that information. Instead, Michael Baker paid the fees for Brogan and Goebel. In the end, Brogan and his team settled the case for $13,000,000.

## III.   MICHAEL BAKER'S INSURANCE POLICIES

The Satterthwaite accident occurred on January 25, 2018. At the time of the accident, Michael Baker held a Commercial General Liability policy ("CGL policy") issued by Liberty. *See* ECF No. 175-1, at 6-183 (CGL Policy No. TB2-681-004145-717). The CGL policy included an "Each Occurrence Limit" of $2,000,000. *Id.* at 7. The CGL policy also included a $250,000 deductible.

Michael Baker also obtained a Professional Liability policy ("PL policy") from Lloyd's Syndicate No. 2623. *Id.* at 185-240. The aggregate limit for any one claim under the PL policy was $15,000,000. *Id.* at 185. In addition, the PL policy was subject to a $200,000 deductible and a self-insured retention of $2,500,000. ECF No. 177-1, at 6. Michael Baker contracted with Vermont General Insurance Company ("VGIC") to reimburse Michael Baker for the PL policy's deductible and self-insured retention. *Id.*

## IV.   MICHAEL BAKER'S COUNTERCLAIMS AND DAMAGES

Michael Baker brings the following four counterclaims against Liberty, which are the subject of this motion for summary judgment:

- Breach of Contract: Liberty breached its duty to defend Michael Baker in the Satterthwaite action.
- Breach of Contract: Liberty failed to provide and pay for independent counsel to defend Michael Baker in the Satterthwaite action.
- Declaratory Judgment: Declaration that Liberty would be required to indemnify Michael Baker for any settlement or judgment in the Satterthwaite case. Because Michael Baker has now settled the Satterthwaite action, it intends to move for leave to restate this count as a breach of contract for Liberty's failure to indemnify Michael Baker for the settlement payout.
- Bad Faith: Liberty acted in bad faith in connection with the Yaeger and Satterthwaite matters.

Michael Baker claims that Liberty's actions have caused it damages. Specifically, Michael Baker alleges the following damages:

As a result of Liberty's breach of contract:
- The cost of settlement with the Satterthwaites:       $13,000,000
- Legal fees for representation by Brogan and Goebel in the Satterthwaite action ("Brogan/Goebel fees"):       $439,446

As a result of Liberty's bad faith:
- Attorneys' fees paid to Barnes & Thornburg in this litigation:       $477,446

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (citation omitted).

"At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). Instead, the court must "view the evidence and make all reasonable inferences in the light most favorable to the nonmoving party." *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).

## ANALYSIS

Liberty makes three arguments as to why Michael Baker's counterclaims fail as a matter of law. First, Liberty contends that Michael Baker did not suffer any recoverable loss because its PL policy insurer paid the Satterthwaite settlement amount and the Brogan/Goebel fees. Therefore, Liberty argues, Michael Baker cannot establish any damages, which are a necessary element of its breach of contract counterclaims. Nor, Liberty contends, can Michael Baker establish that it has suffered an injury-in-fact necessary for standing without any recoverable damages. Second, Liberty argues that Michael Baker's decision to add two redundant defense firms constituted a voluntary payment barred under the terms of Michael Baker's CGL policy as well as under applicable common law. Third, Liberty contends that the American Rule requires Michael Baker to pay its own attorneys' fees to Barnes & Thornburg in this case. Thus, according to Liberty, the attorneys' fees in this case are not recoverable damages. The court addresses, and rejects, each argument in turn.

## I.     RECOVERABLE LOSS

### A.     *Michael Baker Can Establish Damages Under the Collateral Source Rule*

Damages are an essential element of a breach of contract claim. "Pennsylvania law requires that a plaintiff seeking to proceed with a breach of contract action must establish '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages.'"[2] *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). Therefore, in order to press its counterclaims for breach of contract, Michael Baker must establish that it experienced damages resulting from Liberty's breach of contract.

---

[2] Per the court's prior order on Liberty's first motion for summary judgment, Pennsylvania law applies. ECF No. 157, at 10.

Michael Baker claims that it has experienced damages in the amount of $13,439,446—the sum of the Satterthwaite settlement amount and the Brogan/Goebel fees—as a result of Liberty's breach of contract. Liberty argues that Michael Baker did not personally pay the $13,439,446 sum and therefore Michael Baker cannot establish that Liberty's purported breach caused the company any damage. But Michael Baker did directly pay $2,448,366.33 in settlement costs and $439,446 in defense costs. Michael Baker later received reimbursement from VGIC and its PL policy for these expenses. The PL policy also covered the remaining $10,991,079.67 in settlement expenses. The critical question, then, is whether Michael Baker can claim as damages amounts paid directly by a third-party insurer or amounts for which it was later reimbursed by the third-party insurer.

Michael Baker argues that the collateral source rule permits the court to consider losses it experienced as a result of Liberty's breach of contract, even where those losses were later reimbursed by a third-party insurer. "The collateral source rule provides that payments from a collateral source shall not diminish the damages otherwise recoverable from the wrongdoer." *Johnson v. Beane*, 541 Pa. 449, 456 (1995). The rule allows the court "to avoid precluding a claimant from obtaining redress for his or her injury merely because coverage for the injury was provided by some collateral source, e.g. insurance." *Beechwoods Flying Serv., Inc. v. Al Hamilton Contracting Corp.*, 504 Pa. 618, 623 (1984).

Several important rationales and policy concerns underlie the application of the collateral source rule in any particular case.[3] *See Feeley v. United States*, 337 F.2d 924, 927-28 (3d Cir.

---

[3] Liberty further argues that the collateral source rule is a rule of evidence applied to jury trials, not motions for summary judgment. Liberty is correct that "[a]t common law, the 'collateral source rule' prevented the jury from hearing evidence of payments made to an injured person by a source independent of the tortfeasor." 25 C.J.S. § 189. But, today, courts regularly rule on application of the collateral source rule when evaluating motions for summary judgment. *See,*

1964) ("The application or non-application of the [collateral source] rule encompasses many different situations and each one must be analyzed separately.") First, double recovery by a plaintiff is generally disfavored. *See Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1452 (3d Cir. 1996) ("[W]e cannot permit a double recovery . . . ."); *Grubnau v. Centennial Nat. Bank*, 279 Pa. 501, 505 (1924) ("[O]rdinarily a double recovery for the same loss should not be permitted . . . ."). Second, the wrongdoer should not benefit from a windfall by not having to pay damages. *Feeley*, 337 F.2d at 927 ("The defendant wrongdoer should not . . . get the benefit of payments that come to the plaintiff from a collateral source."); *Johnson*, 541 Pa. at 456 ("The principle behind the collateral source rule is that it is better for the wronged plaintiff to receive a potential windfall than for a tortfeasor to be relieved of responsibility for the wrong."). Third, a wrongdoer should not benefit from a plaintiff's foresight in expending its own resources to obtain an insurance policy with a third party. *See Beechwoods*, 504 Pa. at 625 (noting that the collateral source rule is "intended to prevent a wrongdoer from taking advantage of the fortuitous existence of a collateral remedy"). Because this is a breach of contract action, the court adds a fourth principle that it overlays on top of the collateral source rule principles: "The purpose of a [breach of contract] damage award is to place the non-breaching party as nearly as possible in the same position it would have occupied had there been no breach." *Helpon v. Trs. of Univ. of Penn.*, 608 Pa. 45, 50 (2010) (citation and alteration omitted). Allowing Michael Baker to proceed with its claims against Liberty comports with each of these considerations.

---

*e.g.*, *Lomax v. Nationwide Mut. Ins. Co.*, 964 F.2d 1343 (3d Cir. 1992) (applying the collateral source rule to the uninsured motorist context on summary judgment); *Molzof v. United States*, 6 F.3d 461 (7th Cir. 1993) (reversing the district court's grant of summary judgment based on application of the collateral source rule); *Am. State Bank v. Union Planters Bank, N.A.*, 332 F.3d 533 (8th Cir. 2003) (applying limitations contained in the collateral source rule to reverse the district court's grant of summary judgment).

First, Michael Baker will not benefit from a double recovery. Although Liberty raises the scepter of a nearly $14,000,000 windfall to Michael Baker, the terms of Michael Baker's PL policy belie that argument. Michael Baker's PL policy includes a subrogation clause that states that "[i]n the event of any payment under this Insurance, the Underwriters shall be subrogated to all the Assureds' rights of recovery therefore against any person or organization." ECF No. 175-1, at 208. And "[t]he fact that an insurance company or the government will be subrogated to the plaintiff's recovery of actual damages rebuts any argument that the plaintiff will reap the reward of a double recovery."[4] Joseph M. Perillo, *The Collateral Source Rule in Contract Cases*, 46 SAN DIEGO L. REV. 705, 720 (2009); *see also Feeley*, 337 F.2d at 928 ("In some circumstances, there may be no double recovery at all because the plaintiff may be legally obligated to repay his original source of reimbursement, under the doctrine of subrogation."). Therefore, any recovery from Liberty will go to Michael Baker's PL policy carrier, not to Michael Baker.[5] Accordingly, there is no risk of double recovery by Michael Baker.

Second, Liberty may receive a windfall if the court deprives Michael Baker of the opportunity to prove damages. Whether Liberty receives a windfall turns on the question of whether Liberty bears the ultimate responsibility for paying the settlement cost and Brogan/Goebel fees. Michael Baker's policy with Liberty states that "[t]his insurance is primary." ECF No. 175-1, at 36. Accordingly, Liberty is responsible for paying costs related to

---

[4] Indeed, Pennsylvania law has already recognized the same principle in workers' compensation cases. Pennsylvania allows no diminishment in damages for workers' compensation recoveries. *See, e.g.*, *Boudwin v. Yellow Cab Co.*, 410 Pa. 31, 37 (1963) (permitting double recovery where the plaintiff must reimburse the collateral source of the payment). This rule is founded on the idea that, because there is a right of subrogation in the insurance carrier, there is no risk of double recovery.

[5] At oral argument, Liberty's counsel argued that the present breach of contract claims are more properly brought by the professional liability carriers directly against Liberty. But counsel also conceded that were the professional liability carriers to sue Liberty directly, Liberty would vigorously defend the lawsuit by raising any argument permitted by the law.

the settlement and defense of the Satterthwaite matter, unless those costs fall under an exception to the CGL policy. Whether a policy exclusion applies in this case is a question this court has already reserved for trial. *See* ECF No. 157, at 16-21. If a policy exclusion applies, then Liberty bears no responsibility for the expenses in the underlying lawsuit, and relieving Liberty of paying the settlement expenses and Brogan/Goebel fees would not represent a windfall. But on summary judgment, the court must draw all reasonable inferences in favor of the non-moving party. *See Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998). Thus, the court must assume that the CGL policy covers the conduct at issue in the underlying lawsuit. Under that assumption, Liberty should bear the burden of paying for the settlement costs and defense fees. As a result, permitting Liberty to get off without paying a cent of the settlement fees would grant an enormous windfall to Liberty, despite the fact that Michael Baker purchased a policy and paid premiums.[6]

Indeed, dismissing this lawsuit at the summary judgment stage, before a trial on the question of policy exclusions, would lead to a deeply unfair result if Liberty is in fact responsible for expenses in the Satterthwaite matter (as is the case if no policy exclusions apply). In addition to granting Liberty an unwarranted windfall, it would leave Michael Baker in a worse position. As the Third Circuit has pointed out in the context of uninsured motorist premiums, "[i]f an

---

[6] The court also notes that permitting this outcome on summary judgment could lead to perverse incentives for insurers. A primary insurer who knew that an insured had a secondary insurance policy could attempt to hold out long enough without paying any expenses associated with the matter that the insured would use its secondary insurance to handle the case. Indeed, in a high-exposure case, like the present one, an insured who is concerned about its exposure may have strong incentives to use any insurance available to settle the claims. Under Liberty's proposed framework, once the secondary insurance covered the expenses, then the primary insurer would be off the hook because damages would no longer exist. Such an outcome would decrease incentives for primary insurers to promptly and effectively settle claims for insureds, and rather, incentivize primary insurers to draw out proceedings in the hope that a skittish insured will settle using its secondary insurance, thus relieving the primary insurer of any duty to pay.

insurer is allowed to reduce the judgment against it by the amount of collateral benefits paid, insureds will suffer a net loss because they will derive no benefit from the . . . insurance for which they paid premiums." *Lomax v. Nationwide Mut. Ins. Co.*, 964 F.2d 1343, 1347 (3d Cir. 1992). "The insurer, on the other hand, will realize an unwarranted windfall advantage, benefitting from the receipt of premiums and being relieved of the obligation to pay . . . benefits." *Id.* Thus, granting summary judgment, despite the fact that Liberty may be responsible for the Satterthwaite expenses, would result in an anomalous outcome where the breaching party gains a windfall and the non-breaching party suffers a loss.

Third, Liberty should not benefit from Michael Baker's prudence. Michael Baker had the foresight to obtain additional insurance coverage with an unrelated third party. And Michael Baker paid substantial premiums for this additional insurance. "One underlying rationale for the collateral source rule is that plaintiffs should not be penalized because they had the foresight and prudence (or good fortune) to establish and maintain collateral sources of compensation." *Davis v. Odeco, Inc.*, 18 F.3d 1237, 1243 n.21 (5th Cir. 1994); *see also Shillitio-Patterson v. Neucci-Rohrer*, No. 4041 S 1995, 1997 WL 33631125, at *2 (Pa. Comm. Pl. Sept. 15, 1997) ("The [defendant] should not be allowed to benefit because the plaintiff exercised good judgment and foresight in ensuring that there was adequate coverage in the event of a loss."). In keeping with that rationale, the court declines to penalize Michael Baker—and reward Liberty—for Michael Baker's foresight to enter such an arrangement.

And finally, application of the collateral source rule on the facts of this case does not undermine fundamental contract principles. Liberty accurately points out that at least one federal district court in Pennsylvania has refused to apply the collateral source rule to a breach of contract situation on the theory that "[t]he measure of damages for the breach of a contract is the

amount which would have been received if the contract had been performed." *Nisenzon v. Morgan Stanley DW, Inc.*, 546 F. Supp. 2d 213, 235 (E.D. Pa. 2008) (citation omitted).[7] Thus, "[a]pplication of the common-law collateral source rule in contract actions would contravene this principle by awarding the nonbreaching party more damages than necessary to compensate it for the breach." *Id.* But the *Nisenzon* court's concern about placing the nonbreaching party in a better position than before the contract was executed is misplaced here. As noted above, the subrogation clause in the PL policy ensures that Michael Baker will not be "placed in a better position than [it] would have been in if the contract had not been broken." *Id.* (citation omitted). Michael Baker will not pocket the damages recovered in this action and any recovery will be passed along to Michael Baker's PL insurer.

At bottom, the court sees this issue as a question of fundamental fairness. Michael Baker paid substantial premiums to Liberty in exchange for insurance coverage. Permitting Liberty to avoid a jury trial on Michael Baker's counterclaims—and thus shirk any potential responsibility that it had under the policy—on the basis that no damages exist would grant a significant windfall to Liberty. The collateral source rule is "intended to prevent a wrongdoer from taking advantage of the fortuitous existence of a collateral remedy." *Beechwoods*, 504 Pa. at 625. Stopping this lawsuit in its tracks would permit Liberty to take advantage of the fortuitous fact that Michael Baker purchased a secondary insurance policy. Accordingly, the court applies the collateral source rule to find that Michael Baker has recoverable damages sufficient to advance its breach of contract claim

---

[7] The court acknowledges that the Pennsylvania Supreme Court has never applied the collateral source rule to a breach of contract case. Nevertheless, for all of the reasons discussed above, application of the doctrine in this case is appropriate, absent authority from the Pennsylvania Supreme Court expressly prohibiting application of the doctrine in the contracts context.

B. **Michael Baker Can Establish Damages Irrespective of the Collateral Source Rule**

Even if the court were to find that the collateral source rule applies only to the tort context, as Liberty urges, the court would still find that Michael Baker experienced damages. Logic instructs that an insurer is not released from breach of contract damages simply because a third party covered the resultant loss. Take, for example, the hypothetical situation raised by counsel for Michael Baker at oral argument. If counsel's daughter wrecked her car and counsel paid for the repairs, counsel's decision to pay for his daughter's repairs would not extinguish his daughter's claim to recovery from her insurance company. In the same manner, the fact that a third party stepped in to reimburse Michael Baker for money paid as a result of the Satterthwaite settlement or the Brogan/Goebel fees does not extinguish Michael Baker's claim to recovery from Liberty if, at trial, it is determined that Liberty owed Michael Baker coverage.

Moreover, the evidence presented in conjunction with Michael Baker's response brief demonstrates that Michael Baker has, unquestionably, suffered unreimbursed damages as a result of Liberty's actions. Specifically, Michael Baker has produced evidence that Snell & Wilmer— Liberty's coverage counsel—charged Michael Baker for legal expenses. *See* ECF No. 185-7, at 13. According to the records provided, Michael Baker paid Snell & Wilmer nearly $8,000 as part of the $250,000 deductible included under its Liberty policy. In other words, Liberty forced Michael Baker to incur charges for legal expenses that directly supported the very counsel who sought to disprove Liberty's responsibility to provide coverage for Michael Baker. Because Michael Baker incurred this expense as part of its deductible, no outside insurer has reimbursed Michael Baker for this expense. In other words, Michael Baker has suffered nearly $8,000 in unreimbursed losses allegedly due to Liberty's breach of contract. Accordingly, these charges represent additional evidence of damages suffered by Michael Baker.

15

And finally, Pennsylvania law provides that "where a plaintiff can prove a breach of contract but can show no damages flowing from the b[r]each, the plaintiff is entitled to recover nominal damages." *Albert Rolland, S.A. v. Smithkline Beckman Corp.*, No. 85-3217, 1990 WL 90492, at *1 (E.D. Pa. June 27, 1990) (collecting Pennsylvania cases). Accordingly, "[i]n light of the law of Pennsylvania allowing nominal damages for a breach of contract, summary judgment cannot be granted for failure to show damages" where a "plaintiff may be able to adduce sufficient evidence to survive summary judgment on his breach of contract claim with respect to the existence of a contract and breach." *Zeno v. Ford Motor Co., Inc.*, 480 F. Supp. 2d 825, 834 (W.D. Pa. 2007); *see also Haywood v. Univ. of Pittsburgh*, 976 F. Supp. 2d 606, 645 (W.D. Pa. 2013) ("[The] motion for summary judgment must . . . be denied because [the nonmoving party], if it proves the other elements of a claim for breach of contract, may be entitled to nominal damages."). Assuming, without deciding, that Liberty breached its contract with Michael Baker (and Liberty does not challenge the existence or breach of contract on this motion), Michael Baker would be entitled to, at minimum, nominal damages on its breach of contract claims. This fact alone bars summary judgment on a lack of damages theory.

## C.   *Michael Baker Has Standing to Pursue Its Counterclaims*

Liberty argues that the lack of recoverable damages means that Michael Baker has no standing to pursue its counterclaims.[8] Article III standing requires the claimant to show (1) an

---

[8] Liberty also advances an argument that Michael Baker lacks prudential standing. The Supreme Court has cast doubt on the doctrine of prudential standing. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125-129 (2014). Specifically, the court found that permitting courts to decline to adjudicate a claim on prudential—rather than constitutional—grounds "is in some tension with our recent affirmation of the principle that 'a federal court's obligation to hear and decide' cases within its jurisdiction 'is virtually unflagging.'" *Id.* at 125-26 (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)). But this court need not wade into that conversation because Michael Baker is attempting to assert its own right to the benefit of the bargain, not the legal rights or interests of its PL insurer. The fact that the PL insurer will

injury in fact that is "concrete and particularized" and "actual or imminent," (2) that the injury is fairly traceable to the challenged action of the defendant, and (3) that the injury is likely to be redressed by a favorable decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-39 (2016) (citation omitted). Liberty contends that Michael Baker did not suffer an injury-in-fact, ultimately, because it received reimbursement for any expenses it incurred.

But Michael Baker suffered an injury within the meaning of Article III when Liberty denied it benefits that it was allegedly owed under the CGL policy. Like any private contract claim, Michael Baker's injury for purposes of standing does not depend on allegations of financial loss. *See Perry v. Newsom*, 18 F.4th 622, 639-40 (9th Cir. 2021) ("Federal courts continue to follow this common law principle that a breach of contract is itself a concrete injury for purposes of Article III standing, regardless of whether a plaintiff suffers actual damages."); *J.P. Morgan Chase Bank, N.A. v. McDonald*, 760 F.3d 646, 650-51 (7th Cir. 2014) ("When one party fails to honor its commitments, the other party to the contract suffers a legal injury sufficient to create standing even where that party seems not to have incurred monetary loss or other concrete harm."). Instead, Michael Baker suffered an injury when Liberty breached the contract. *See Katz v. Pershing, LLC*, 672 F.3d 64, 72 (1st Cir. 2012) ("[W]hen a plaintiff generally alleges the existence of a contract, express or implied, and a concomitant breach of that contract, her pleading adequately shows an injury to her rights."); *Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284, 287 (6th Cir. 2018) (holding that an insured who was denied benefits but suffered no financial loss nevertheless sustained a concrete injury because "he was denied the benefit of his bargain"). Michael Baker purchased an insurance plan

---

later assert a right to any money that Michael Baker collects in this lawsuit does not create a prudential standing concern. *See Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 539 n.12 (3d Cir. 1994) ("[A] plaintiff does not lose standing merely because there is a lien on his recovery.").

providing that Liberty would cover costs such as the settlement and defense expenses arising from the Satterthwaite action. But Liberty refused to pay those expenses. The fact that a third-party—here, the PL insurer—stepped in to alleviate the harm resulting from the alleged breach of contract does not erase the insured's injury-in-fact. Accordingly, Michael Baker has standing to assert its counterclaims against Liberty.

## II.   VOLUNTARY PAYMENT

Liberty argues that the voluntary payment provision in the CGL policy further prohibits reimbursement for expenses voluntarily paid without Liberty's consent. Moreover, Liberty contends that the common-law voluntary payment doctrine additionally bars Michael Baker's attempt to recover the Brogan/Goebel fees because Michael Baker freely chose to hire Brogan and Goebel. Both arguments fail.

### A.   CGL Policy Provision

The CGL policy provides that "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." ECF No. 175-1, at 35. Liberty argues that this provision means that Michael Baker cannot recover for its decision to hire Brogan and Goebel without Liberty's consent. The court rejects this argument for two reasons.

First, Michael Baker has raised sufficient fact issues as to whether the decision to hire Brogan and Goebel was truly voluntary. Michael Baker has produced evidence suggesting that Liberty's handling of the Satterthwaite action forced Michael Baker to hire its own counsel. First, Liberty hired counsel without extensive experience defending such serious personal injury claims, despite the case raising potentially catastrophic liability for Michael Baker. Then, Liberty refused to provide settlement authority to Thompson, despite the fact that failing to settle the

18

case could expose Michael Baker to serious liability. ECF No. 185-4, at 11-12. Instead, coverage counsel for Liberty—not the counsel Liberty hired to represent Michael Baker in the underlying lawsuit—refused settlement requests on Michael Baker's behalf without discussing the settlement offers with Michael Baker. And Thompson retained an expert that issued an opinion that caused serious damage to Michael Baker's case. All the while, Liberty knew that it intended to disclaim coverage. Liberty did not inform Michael Baker of that fact nor of any potential conflict of interest between Liberty and Michael Baker; Michael Baker found out when Liberty filed the present declaratory judgment action. Michael Baker argues that this series of events compelled it—involuntarily—to retain Brogan and Goebel to avoid a disastrous outcome predicated on Liberty's missteps. Accordingly, a factfinder, and not the court on a motion for summary judgment, should examine the facts to determine whether the decision to hire Brogan and Goebel was voluntary in light of Liberty's conduct.

Second, Michael Baker has established a question of material fact as to whether the voluntary payment provision in the CGL policy is enforceable. Michael Baker argues that Liberty breached its duty to defend in a number of ways, including by hiring insufficient counsel and by failing to give that counsel adequate settlement authority. And under Pennsylvania law, "[a] material breach by one party to a contract entitles the non-breaching party to suspend performance." *Falls v. State Farm Ins. Mut. Auto Ins. Co.*, 774 F. Supp. 2d 705, 711 (M.D. Pa. 2011); *see also LJL Transp., Inc. v. Pilot Air Freight Corp.*, 599 Pa. 546, 560 (2009) ("[O]ur Court has long recognized the established precept of contract law that a material breach of a contract relieves the non-breaching party from any continuing duty of performance thereunder."). Because providing an adequate defense clearly constituted a material provision of the contract, any breach of that provision would relieve Michael Baker from complying with the voluntary

payment provision of the CGL policy, i.e., relieve it from the duty of obtaining Liberty's consent before hiring outside counsel. Because the court determines that a factfinder could find that Liberty breached the CGL policy, thus rendering the voluntary payment clause unenforceable, the court declines to grant summary judgment on this theory.

### B.   *Common-Law Doctrine*

Finally, Liberty argues that the common-law voluntary payment doctrine bars recovery of the Brogan/Goebel fees. The common-law voluntary payment doctrine is a form of estoppel. *Takeda Pharms. U.S.A., Inc. v. Spireas*, 400 F. Supp. 3d 185, 218 (E.D. Pa. 2019). It "provides that when 'one voluntarily and without fraud or duress pays money to another with full knowledge of the facts, the money paid cannot be recovered.'" *Abrevaya v. VW Credit Leasing, Ltd.*, No. 09-521, 2009 WL 8466868, at *2 (E.D. Pa. July 22, 2009) (quoting *Acme Markets, Inc. v. Valley View Shopping Ctr., Inc.*, 493 A.2d 736, 737 (Pa. Super. Ct. 1985)). "Conversely, the voluntary payment doctrine does not apply and a party can recover payments where the payments were made without full knowledge of the facts, or because of the other party's fraud, or under some type of duress." *Takeda*, 400 F. Supp. 3d at 218-19 (citation omitted); *see also Williams v. Enter. Holdings, Inc.*, No. 12-05531, 2013 WL 1158508, at *2 (E.D. Pa. Mar. 20, 2013) ("Exceptions to the voluntary payment doctrine occur when, like the name implies, payment is not voluntary."). Liberty argues that Michael Baker cannot overcome the common-law voluntary payment doctrine because it requires a showing of duress or fraud that Michael Baker cannot make.

But Liberty's reliance on the common-law voluntary payment doctrine is misplaced. The doctrine only "applies when the money is paid by one party to another party in a prior action when both parties are involved in the present action." *Hamid v. Stock & Grimes, LLP*, No. 11-

2349, 2012 WL 2135502, at *3 (E.D. Pa. June 12, 2012); *see also Philidor Rx Servs. LLC v.*
*Polsinelli PC*, --- F. Supp. 3d ---, 2021 WL 3418859, at *7 (E.D. Pa. Aug. 5, 2021) ("Payments to
third parties are generally not impacted by the voluntary payment doctrine."). Here, Michael
Baker paid the money in question to DLA Piper and Goebel Anderson. But "[i]f money is paid to
a non-party, the voluntary payment doctrine has no effect on the current suit." *Hamid*, 2012 WL
2135502, at *3.

American Zinc Recycling Corp. v. TOPCOR Augusta, LLC*, No. 15-198, 2020 WL
4583870 (W.D. Pa. Aug. 10, 2020), is instructive. In that case, the court found that the voluntary
payment doctrine did not apply where American Zinc Recycling ("AZR") entered into a contract
with TOPCOR, then due to TOPCOR's breach of the contract, AZR had to pay a third party for
necessary repairs. Stated in other words, "AZR asked TOPCOR to perform certain work, claims
that the work was inadequate and paid others to repair that work" then sought "recovery from
TOPCOR for its costs in doing so." *Id.* at *6. Under such circumstances, the court ruled that the
voluntary payment doctrine did not apply. *Id.* Similarly, Michael Baker entered into a contract
with Liberty, Michael Baker alleges that Liberty breached that contract, and as a result Michael
Baker incurred costs—paid to a third party—in repairing the mess left by Liberty. Under these
facts, the voluntary payment doctrine does not apply.

In sum, Michael Baker has raised a genuine issue of fact as to whether its decision to pay
Brogan and Goebel to assist with its defense in the Satterthwaite action was truly voluntary.
Further, Michael Baker has brought forward evidence that raises a genuine issue of fact as to
whether Liberty breached the CGL policy, thus relieving Michael Baker of its duty to obtain
consent before hiring Brogan and Goebel. And finally, Pennsylvania courts have rejected
application of the common-law voluntary payment doctrine where a third party received the

money. Accordingly, the court declines to enter summary judgment on Liberty's voluntary payment theory.

## III.     ATTORNEYS' FEES IN THIS MATTER

Finally, Liberty argues that Michael Baker is not entitled to collect its fees paid to Barnes & Thornburg in this action based on the American Rule. Generally, the American Rule holds that "each party to a lawsuit bears its own attorneys' fees." *Ford v. Temple Hosp.*, 790 F.2d 342, 346 (3d Cir. 1986) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)). "Under the American Rule, applicable in Pennsylvania, a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception." *Trizechahn Gateway LLC v. Titus*, 601 Pa. 637, 652 (2009). But Pennsylvania law expressly permits an award of attorneys' fees when an insurer acts in bad faith. Specifically, "if the court finds that the insurer has acted in bad faith towards the insured, the court may . . . [a]ssess court costs and attorney fees against the insurer." 42 Pa. C.S. § 8371.

Michael Baker alleges that Liberty acted in bad faith. And Liberty's motion for summary judgment does not directly address the merits of the underlying bad faith claim. Therefore, Michael Baker's bad faith claim will move forward, and the associated claim for attorneys' fees may also move forward.

## CONCLUSION AND ORDER

For the foregoing reasons, Liberty's motion for summary judgment is DENIED.

DATED February 10, 2022

BY THE COURT

Jill N. Parrish
United States District Court Judge