IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LIBERTY MUTUAL FIRE INSURANCE,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL BAKER INTERNATIONAL, INC.; JOELLE SATTERTHWAITE; JACKSON SATTERTHWAITE; and AUDREY J. YAEGER,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MICHAEL BAKER INTERNATIONAL'S MOTION TO CORRECT THE RECORD (ECF NO. 305) AND DENYING LIBERTY MUTUAL'S MOTION TO BIFURCATE TRIAL (ECF NO. 312)**<br><br>Case No. 2:19-cv-881-JNP-DAO<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Daphne A. Oberg |

Before the court is a motion to correct the record (ECF No. 305) filed by Defendant and Counter-Claimant Michael Baker International, Inc. ("MBI") and a motion to bifurcate trial (ECF No. 312) filed by Plaintiff Liberty Mutual Fire Insurance ("Liberty"). After considering the parties' written submissions, the court grants MBI's motion and denies Liberty's motion.

I. MOTION TO CORRECT THE RECORD

MBI moves for the court to amend the memorandum decision and order denying its motion for partial summary judgment. ECF No. 319 (originally filed under seal as ECF No. 299). Specifically, MBI requests that the court alter its description of two facts unrelated to the outcome of the motion. To be clear, MBI does not seek reconsideration of the outcome, it simply desires a revision of the court's non-material factual findings.

A. VGIC'S FINANCIAL STATUS

First, MBI moves for the court to delete its statement that it "goes undisputed that VGIC was underfunded." ECF No. 319 at 18 n.7. MBI argues that the Vermont General Insurance

Company ("VGIC"), its wholly owned captive insurer, was not underfunded. It also points out that it disputed Liberty's assertion on this point in its briefing. The court grants MBI's motion as to this fact and agrees to delete the memorandum decision's reference to VGIC's financial state.

As an initial matter, it appears that there is a genuine dispute over the financial state of VGIC. To make the case that VGIC was not fully capitalized, Liberty cited to deposition testimony by MBI's 30(b)(6) witness, Adam Phillips, who was MBI's Vice President and Corporate Controller. The original transcript of Phillip's testimony states that VGIC failed to pay MBI's defense counsel in the Satterthwaite case because of a "low-of-funds issue." ECF No. 272-1 at 211, 26:2. MBI provides evidence that the transcription of this remark was in error by producing a request for a correction to the transcript, dated November 25, 2020, in which MBI's attorneys, on behalf of Phillips, sought to amend the transcript to show that Phillips actually stated that MBI's lack of payment was due to a "flow-of-funds issue." ECF No. 305-1. Additionally, during the same deposition Liberty directly asked Phillips whether VGIC maintained sufficient funds to pay MBI's defense counsel. ECF No. 272-1 at 211, 26:8-9. Phillips answered "yes." *Id*. at 26:10. In sum, these facts indicate that VGIC's financial state is in dispute.

Moreover, the court missed that the only two statements of additional facts contained in Liberty's opposition brief that MBI did not dispute were Additional Fact Nos. 26 and 30. ECF No. 289 at 9. MBI's reply brief states that "Michael Baker does not dispute Liberty's Additional Fact Nos. 26 and 30. Unfortunately, all of Liberty's other purported facts are inadmissible or immaterial." ECF No. 289 at 9. Liberty asserted that MBI kept VGIC underfunded in Additional

Fact No. 49. Thus, it was inaccurate for the court to state that facts pertaining to VGIC's financial state were undisputed.[1]

Because it was disputed that VGIC was underfunded, the court will modify its memorandum decision to delete its reference to VGIC's financial state.

B. MBI's Insurance Policy

Second, MBI requests that the court alter its description of how the deductible for its commercial general liability policy ("CGL policy") with Liberty functioned. The court grants MBI's motion and agrees to modify this language.

The memorandum decision and order denying MBI's motion for partial summary judgment stated that

> MBI's general liability policy with Liberty is capped at $2,000,000, and includes a $250,000 deductible. Accordingly, if MBI were to prevail in this coverage litigation, it would pay $750,000 of the settlement, Liberty would pay $1,750,000, and Lloyd's would pay the rest. If Liberty were to prevail, MBI would pay $2,500,000 of the Satterthwaite settlement and Lloyd's would pay the rest. Lloyd's liability to the Satterthwaites is the same in each scenario.

ECF No. 319 at 18 (citations omitted). MBI admits that the court was correct in finding that the CGL policy was subject to a $250,000 deductible, but it argues that the deductible did not function as the court expected because of an endorsement modifying its terms. The ultimate outcome of this modification is allegedly that "the entire $2,000,000 limit remains available for Liberty to pay as damages for the Satterthwaite settlement." ECF No. 305 at 6. On the other hand, Liberty argues

---

[1] Citing DUCivR 56-1(c)(3), Liberty argues that simply stating that a fact was disputed in a reply brief is not enough to create a dispute of fact, and that an explanation as to why the fact is disputed is needed before the court takes the dispute seriously. If the question before the court were whether there was a material dispute of fact as to this issue that would decide summary judgment, the court would agree that MBI's fact-free attempt to dispute the fact in its reply brief was insufficient. But here, the issue is the accuracy of the court's statement that "it goes undisputed that VGIC was underfunded." That statement was inaccurate. Moreover, all parties agree that the sufficiency of VGIC's funding was immaterial to the outcome of the motion.

3

that the court accurately described the workings of the GCL policy. It maintains that "the [c]ourt is correct that if MBI prevails on coverage it would be entitled to net $1,750,000 (which is policy limit minus deductible)." ECF No. 307 at 5.

The court need not delve into the nitty gritty of the CGL policy. Whether MBI can access the full policy limit of $2,000,000 or only $1,750,000 was immaterial to the outcome of the motion for partial summary judgment. The reason the court discussed this issue was merely to show that "[r]egardless of whether Liberty or MBI wins the coverage suit, Lloyd's settlement payment to the Satterthwaites will not change." ECF No. 319. It does not matter whether the court adopts Plaintiff or Defendant's interpretation of the policy. The court's logic still holds.

Rather than accept either party's suggestion for amending the memorandum decision, the court will modify the passage at issue to remove the contested fact entirely. The new language is as follows:

> MBI's general liability policy with Liberty is capped at $2,000,000, and includes a $250,000 deductible. *Accordingly, if MBI were to prevail in this coverage litigation, Liberty and MBI would together pay $2,500,000, and Lloyd's would pay the rest*. If Liberty were to prevail, MBI would pay $2,500,000 of the Satterthwaite settlement and Lloyd's would pay the rest. Lloyd's liability to the Satterthwaites is the same in each scenario.

This phrasing retains the court's reasoning but resolves the impasse between the parties.

## II.     MOTION TO BIFURCATE TRIAL

Pursuant to Federal Rule of Civil Procedure 42(b), Liberty moves to bifurcate the trial into two phases: one to determine Liberty's coverage liability and one to address MBI's bad faith claims.

Rule 42(b) provides: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." "Thus, bifurcation of issues for trial is appropriate where the

4

court finds (1) that convenience of a particular party or both parties together favors separate trials; (2) that expedition or economization of time and resources favor separate trials; or (3) that prejudice would result to one or more parties if separate issues were tried in a single trial." *Vine v. GEICO Indemn. Co.*, No. 1:17-cv-00010-JNP-DBP, 2017 WL 3498680, at *1 (D. Utah Aug. 15, 2017) (citations omitted). "Although bifurcation 'is not to be routinely ordered,' this court nonetheless has 'broad discretion in deciding whether to sever issues for trial and the exercise of that discretion will be set aside only if clearly abused.'" *Id*. (internal citations omitted). "The burden is on the defendant [or counterclaim defendant] to convince the court that a separate trial is proper in light of the general principle that a single trial tends to lessen delay, expense, and inconvenience to all parties." *Sensitron, Inc. v. Wallace*, 504 F. Supp. 2d 1180, 1186 (D. Utah May 2, 2007) (quoting *Patten v. Lederle Labs*, 676 F. Supp. 233, 238 (D. Utah Nov. 2, 1987)). Here, Liberty cannot overcome the presumption that a single trial is proper. To illustrate why, the court examines each of the three Rule 42(b) factors—prejudice, convenience, and efficiency.

First, Liberty argues that a single trial will cause confusion that only bifurcation can ameliorate. The court is unconvinced that any confusion would result from trying the coverage and bad faith claims together. Jurors are intelligent. With instructions explaining the differences between these claims, there is little risk that a jury will improperly conflate them.

As for the risk of prejudice posed by the introduction of evidence related to Liberty's bad faith behavior, the court finds that bifurcating the trial would not avoid the risk of prejudice described by Liberty. In *Vine*, this court held that an insurer would suffer undue prejudice if the insured's contractual claim and bad faith claim were tried in the same trial before the same jury. 2017 WL 3498680, at *2. This was because "evidence regarding [the insurer's] internal claims handling process [was] crucial to any defense to the bad faith claim, but irreparably damning in

the context of the contractual claim." *Id*. The court chose to bifurcate the trial because doing so could successfully eliminate the risk of prejudice to the insurer.

The present case is distinguishable. In *Vine*, both parties agreed to bifurcate the trial—they merely disagreed on whether the court should also bifurcate discovery and whether a second jury was needed for the bad faith trial. *Id*. at *1. Here, MBI objects to bifurcation. Moreover, in *Vine*, there was no allegation that a contractual ambiguity entitled the insured to introduce parol evidence during the coverage phase of the trial. In the present case, parol evidence is essential to the resolution of the coverage issue and there is little doubt that evidence related to the bad faith claim will be used to establish the meaning of the "professional services" exception. For instance, evidence pertaining to the parties' course of dealings will likely be essential in establishing *both* coverage liability and Liberty's bad faith dealing as discussed in the court's first memorandum decision and order denying Liberty's motion for summary judgment. ECF No. 157 at 14 (citing *Metal Marketplace, Inc. v. United Parcel Serv.*, 733 F. Supp. 976, 978–79 (E.D. Pa. Mar. 16, 1990). The court is cognizant that it will have to provide instructions to the jury to help separate the bad faith issue from the coverage issue. Such guidance will possibly involve explaining that evidence of settlement negotiations is not evidence that an insurer has admitted coverage liability. But realistically, the risk of prejudice resulting from evidence showing Liberty's allegedly bad faith acts would exist even in a bifurcated trial. Bifurcation is, thus, not an effective solution like it was in *Vine*.

Even if bifurcation could reduce some of the potential prejudice Liberty would face in a single trial, the court would still deny the motion. Liberty cannot overcome the presumption that a single trial would lessen delay, expense, and inconvenience. *See Sensitron, Inc.*, 504 F. Supp. 2d at 1186. First, there are overlapping facts that would be discussed in both trials. It would be

inefficient for the court to hear these facts twice, wasteful for the parties to prepare to present these facts twice, and inconvenient for witnesses who will have to testify to these facts twice.[2] Second, this case has been ongoing for nearly four years and it involves a car crash that occurred at the beginning of 2018. Holding two trials would postpone the resolution of the case even further and continue the pattern of delay that is endemic to this dispute.[3]

In sum, Liberty has not shown that any strategic disadvantage it may suffer hangs heavier in the balance than the significant detriment to convenience, economy, and efficiency that two trials would necessarily entail. Thus, the court denies Liberty's motion to bifurcate.

## CONCLUSION & ORDER

For the aforementioned reasons, the court GRANTS MBI's motion to correct the record and DENIES Liberty's motion to bifurcate the trial. The court will also file a corrected version of its memorandum decision and order denying MBI's motion for partial summary judgment.

DATED August 18, 2023

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge

---

[2] Liberty argues that if the court bifurcates the trial, only one trial will likely occur because it would win on the coverage issue, obviating the need for a second trial on the bad faith issue. Without ruling on the contested issue of whether a second trial would be legally necessary in such a scenario, the court refuses to make a decision based solely on the "best-case" outcome of the first trial. While merely holding a trial on the coverage issue would save time, the risk of massive inefficiency and expense posed by a second trial is too massive to ignore.

[3] There have been three motions for summary judgment and motions to reconsider portions of two of them.